The Honorable Donna Hutchinson State Representative 24 Rillington Drive Bella Vista, Arkansas 72714-3204
Dear Representative Hutchinson:
I am writing in response to your request for an opinion on a number of questions concerning special education policies, procedures and guidelines in the area of speech or language impairment. As you note, the Arkansas Department of Education's (ADE's) rules and regulations governing Special Education and Related Services, http://arksped.k12.ar.us/sections/rulesandregulations.html, include "Procedural Requirements and Programs Standards" and "Special Education Eligibility and Program Guidelines for Children with Disabilities Ages 3-21." In presenting your questions, you have excerpted in particular the following language from the ADE Special Education Eligibility and Program Guidelines for Children with Disabilities Ages 3-21 (hereinafter "Program Guidelines"):
 Based on the judgment made regarding the severity of the communication disorder using the Arkansas Severity Ratings Assignment Form, it will be necessary to make adjustments in caseload size (total number of students served) to provide appropriate intervention for students requiring more intensive services. The guidelines for making such adjustments are stated in § 17.03, "Maximum Teacher/Pupil Caseload," in the document Special Education and Related Services: Procedural Requirements and Program Standards (ADE, 2000.)
Program Guidelines at Part I, ("Eligibility Criteria for Children with Disabilities, Ages 5-21"), subpart I ("Speech or Language Impairment") at p. 6 (subsection VII, "Programming Considerations").
Against this backdrop, you have posed eight questions which I will restate and address seriatim.
Question 1 — Are caseload size adjustments for speech/language pathologists based solely on the assignment of a moderate to severe rating on the Arkansas Severity Ratings Assignment Form or are multiple factors such as the need for intensive services and services provided by multiple service providers (i.e. special education teacher) factors to be considered when making caseload size adjustments?
According to my reading of the current rules, caseload size, i.e., total number of students served, is adjusted based solely upon the severity ratings. The Procedural Requirements and Program Standards (hereinafter "Standards") state as follows under a subsection of "Program Standards" entitled "Exceptions To The Stated Maximum Teacher/Pupil Caseloads":
 For each student receiving services for a moderate to severe speech and/or language impairment, the maximum teacher/pupil caseload will be reduced by two (2) students. [Refer to the document Special Education Eligibility Criteria and Program Guidelines for Children with Disabilities, Ages 3-21, (ADE, 2000) for the "Arkansas Guidelines and Severity Ratings for Speech/Language Impairment."]
Standards at § 17 ("Program Standards"), subsection 17.03.2.3.
As indicated by this rule, the severity of a student's communication disorder is rated and assigned in accordance with the document entitled "Arkansas Guidelines and Severity Ratings for Speech/Language Impairment" (hereinafter "Guidelines Document"), and the maximum teacher/pupil caseload (see id. at subsection 17.03.1) is to be adjusted based on the severity ratings. Among other things, the Guidelines Document guides speech-language pathologists in completing the Arkansas Severity Ratings Assignment Form that documents the severity rating(s). See Program Guidelines, supra, at Part III, Section 1.
The adjustment of caseload based on the assigned severity ratings is also reflected in the above excerpt from the Program Guidelines, as well as the Guidelines Document: "If the speech language pathologist provides services, then the severity ratings(s) will be used for caseload adjustment." Id. at p. 3.
Upon inquiry, I am informed that this rule is currently under review by ADE, with a view to its possible repeal in favor of setting a straight teacher/pupil caseload limit. I am further informed that any such revision would be scheduled to be effective in July of 2008. You may wish to contact ADE for further information regarding the possible amendment of the rules and regulations in this regard.
Question 2 — The Arkansas Department of Education rules state that caseload size should be adjusted for students receiving more intensive speech therapy services. What constitutes more intensive services?
This question presumably refers to the statement in the above-excerpted provision of the "Speech or Language Impairment" part of the Program Guidelines to the effect that "it will be necessary to make adjustments in caseload size (total number of students served) to provide appropriate intervention for students requiring more intensive services." Emphasis added. The phrase "more intensive services" is not defined. It may have reference to the severity ratings noted above. I cannot be certain of its meaning, however, and can only suggest that you contact ADE, whose responsibility it is to administer these rules and regulations, for further guidance. See A.C.A. § 6-41-207(c) and (e) (Repl. 1999) (requiring the State Board of Education to make rules and regulations "in keeping with [The Children With Disabilities Act of 1973, as amended]" and designating the State Board as "the agency having general educational supervision over public agencies which provide education services to children with disabilities . . . to ensure that each public agency complies with state and federal regulations. . . ."). See also A.C.A. §25-6-101 (Repl. 2002) (expressing intent that "all authority and responsibility of the State Board of Education be administered through the Department of Education. . . .).
Question 3 — Can each school district define the amount of time that constitutes "intensive speech therapy services?"
Generally, "no," because pursuant to A.C.A. § 6-41-217(b)(2) (Supp. 2007), special education services are to be provided as stated in each student's "individualized education program" or "IEP," which is formulated by a multidisciplinary team in accordance with the requirements of the Individuals With Disabilities Education Act ("IDEA,"20 U.S.C. § 1400 et seq.). See id. at § 1414(d) (defining "IEP" and "IEP Team"). The IEP must include, among other things, a "statement of the special education and related services . . . to be provided to the child" and "the anticipated frequency, location, and duration of those services. . . ." A.C.A. § 6-41-217(b)(3)(D) and (G) and20 U.S.C. § 1414(d)(1)(A)(i)(IV) and (VII). See also generally Hendrick Hudson Dist. Bd. of Ed. v. Rowley, 458 U.S. 176, 182 (1982) ("The `free appropriate public education' required by the [IDEA] is tailored to the unique needs of the handicapped child by means of an `individualized educational program (IEP).").
The duration of services must therefore be established by the IEP team based upon the child's individual needs. The notion of districts dictating the amount of time spent providing services, as suggested by your question, seems contrary to the IEP process.
Question 4 — Is the need for speech therapy services determined solely by the speech pathologist, or is the need for speech therapy services determined y the student's Evaluation/Programming Committee and Individualized Education Program (IEP) Team?
The speech pathologist does not alone determine the need for services. Pursuant to A.C.A. § 6-41-215(c) (Repl. 1999), evaluation for eligibility for special education and related services is made by "a multidisciplinary team or group of persons, including at least one (1) teacher or other specialist with knowledge in the area of suspected disability." See also 20 U.S.C. § 1414(b)(4)(A) ("Upon completion of the administration of assessments and other evaluation measures . . . the determination of whether the child is a child with a disability as defined in section 1401 (3) of this title and the educational needs of the child shall be made by a team of qualified professionals and the parent of the child. . . .").
I will note that under the ADE rules and regulations, the speech pathologist is responsible for reporting the presence or absence of a clinical disorder. See Program Guidelines at Part I, ("Eligibility Criteria for Children with Disabilities, Ages 5-21"), subpart I ("Speech or Language Impairment") at p. 6 (subsection VI, "Evaluation Data Analysis."). See also id. at p. 4 ("The appraisal for and diagnosis of a specific communication disorder is the responsibility of a qualified speech-language pathologist."). This evaluation information, however, is integrated with other data gathered through the screening/evaluation processes, "so that the committee may determine if a disabling condition exists which impedes the student's acquisition of expected cognitive and affective performance goals." Id. at p. 6.
Question 5 — Is the Arkansas Severity Ratings Assignment Form the only means by which caseload size adjustments are made?
Currently, "yes." See response to Question 1.
Question 6 — What role does the student's IEP Team and Evaluation/Programming Committee have in determining the programming and placement decision in regard to speech therapy services?
The programming and placement decisions are made by the IEP Team and the Evaluation/Programming Committee. See "Speech or Language Impairment," supra at p. 6, and A.C.A. § 6-41-217 (Supp. 2007).
Question 7 — Is a severity ratings assignment of moderate to severe based solely on one area of need rather than an overall profile of the child's speech/language functioning?
A child can be rated moderate to severe in one area of the clinical communication disorder. See Program Guidelines, supra, at Part III, Section 1 ("Arkansas Guidelines and Severity Ratings for Speech/Language Impairment," p. 21, "Arkansas Severity Ratings Assignment" form).
It should be noted, however, that in assessing an area of need, e.g., articulation, the speech-language pathologist is required to consider "related functions" which may contribute to or underlie a communication disorder. See "Speech or Language Impairment," supra at p. 4 (subsection IV.D.1., "Required Evaluation Data," noting "[f]or example, impaired articulation may be related to an auditory acuity and/or perceptual deficit, a motor-speech problem, overall maturational lag, or deviant oral structure."). Specifically, in this regard, the rules require "two or more tests and/or procedures which delineate the specific nature and extent of the disorder." Id. In response to your question, therefore, while the regulations do not use the term "overall profile," the severity ratings assignment does include an assessment of related functions.
Question 8 — Is a severity ratings assignment of moderate to severe appropriate whenever the child's measured speech/language skills are commensurate with overall ability?
The current Arkansas Guidelines and Severity Ratings for Speech/Language Impairment include the following notation:
 When the student's language/communicative abilities are commensurate with cognitive/educational abilities, a statement to that effect should be included with the severity rating in the description of the present level of functioning on the IEP.
Program Guidelines, supra, at Part III, Section 1, p. 4.
It thus appears that the severity rating process under the current rules does not include taking into consideration whether the child's speech/language abilities are commensurate with cognitive functioning. Whether or not this is appropriate is a question that is not susceptible to analysis in an official Attorney General opinion, which is necessarily confined to questions of law.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/EAW:cyh